JACKSON, Respondent, v. CHICAGO & N. W. RY. COM-
PANY, Appellant.

(147 N. W. 732.)

**1.    Courts—State Courts—Jurisdiction—Action Against Interstate
Carriers—Concurrent Jurisdiction.**

State courts have concurrent jurisdiction with federal courts
of causes of action for injuries to interstate shipments of live-
stock, though such shipments are governed exclusively by the
federal law superseding the state law.

**2.    Carriers—Injury to Shipment of Livestock—Delay—Rough
Handling—Sufficiency of Evidence.**

Where, in an action alleging injuries through delay in trans-
portation, and rough handling of livestock during shipment,
under a contract requiring shipper to feed and water the
animals, there was no evidence of delay, or as to what would
constitute a reasonable time for transportation, or that the in-
jured condition was due to rough handling, or as to what
care was given as to feed and water, and no claim for damages
for delay or rough handling was made by shipper at des-
tination, **held,** that a verdict for plaintiff for such injuries was
unauthorized.

**3.    Carriers—Injury to Livestock—Sunday Train Connections—Neg-
ligent Delay—Assumption of Risk.**

Where on Saturday on which a shipper delivered livestock
to a carrier for transportation three trains left the station on
which livestock might have been shipped, but plaintiff did not
have his livestock ready for loading until time of last train,
and carrier's agent notified plaintiff that there were no
Chicago connections with it on Sunday, and that he would have
to take his chances; there being no evidence of rough handling
in transit; **held,** that the carrier was not negligent in con-
nection with a delay in the shipment in consequence of want
of such train connections.

(Opinion filed June 15, 1914.    Rehearing pending.)

Appeal from Circuit Court, McCook County.    Hon. JOSEPH
W. JONES, Judge.

Action by F. T. Jackson against the Chicago & Northwestern
Railway Company for injuries to livestock shipped over defendant
railway.    From a judgment for plaintiff, and from an order deny-
ing a new trial, defendant appeals.    Reversed and remanded.

*A. K. Gardner & E. H. Wilson,* for Appellant.

*Stiles & Devaney,* and *Pflaum & King,* for Respondent.

(1.)  Under point one in the opinion, Appellant cited:

Adams Express Co. v. Croninger, 226 U. S. 491; C. B. & Q. v. Miller, 226 U. S. 513; C. St. M. & O. v. Latta, 226 U. S. 529; Hart v. Ry. 112 U. S. 331; Kansas etc., Ry. Co. v. Karl, 227 U. S. 639; Missouri etc. Ry. Co. v. Harriman, 227 U. S. 657; St. Louis, etc. Ry. Co. v. Edwards, 227 U. S. 265; Wells-Fargo Express Co. v. Neiman, 227 U. S. 469; Loomis v. Ry. Co., (N. Y.) 101 N. E. 907; McGoon v. N. P. Ry. Co., 204 Fed. 998; Van Patten v. Ry. Co., 74 Fed. 981; Siggins v. Ry. Co. (Wis.) 140 N. W. 1128; Federal Judicial Code, Sec. 24, sub-division 1 and Interstate Commerce Act, Secs. 8, 9 and 20.

Respondent cited:

Vol. 29 Amer. & Eng. Enc. of Law 2nd-230; Section 256 of Judicial Code of the U. S. 1912; St. Louis & S. F. Ry. Co. v. Heyser, Ark. 130 S. W. 562; Ann. Cases 1912 A. page 610; Central Ga. R. Co. v. Sims (Ala) 53 So. 826; Fry v. Southern Pac. R. Co. (Ill.) 93 N. E. 906; Pittsburg C. C. & St. L. Co. v. Mitchell (Ind.) 91 N. E. 737; Smeltzer v. St. Louis Ry. Co. 168 Fed. 420; Atlantic Coast Line R. v. Riverside Mills, 219 U. S. 208; Galveston, etc. Ry. Co. v. Wallance (Tex.) 117 S. W. 169; affirmed in 223 U. S. 481; Missou. Pac. Ry. Co. v. Larabee Mills, 211 U. S. 612; N. Y. N. H. & H. R. Co. v. N. Y. 165 U. S. 628; Second Employer's Liability Cases, 223 U. S. 1, 57, 56 1 Ed. 327.

[2] Under point two of the opinion, Appellant cited:

Peterson v. C. M. & St. P. Ry. Co., 19 S. D. 122; Colsch v. Ry. Co., (Ia.), 127 N. W. 198; Wilkie v. I. C. Ry. Co., (Ia.) 133 N. W. 746; Hanley v. Ry. Co., 134 N. W. 417; Cleve v. Ry. Co., (Neb.) 108 N. W. 982; Wright v. Ry. Co. 97 S. W. 555; St. Louis Co. v. Brosius (Tex.) 105 S. W. 1131.

(3) Under point three of the opinion, Appellant cited:

Chicago & Northwestern Ry. Co., v. Kirby, 225 U. S. 155.

McCOY, J.  This is an action to recover damages against defendant, as a common carrier, by reason of alleged injuries to certain mules and horses, and the loss of one horse alleged to have been caused by the negligence of defendant. There was a verdict and judgment for $860.00 in favor of plaintiff, and motion for new trial was overruled, and defendant appeals.

[1] Defendant made a motion in this court to dismiss the action on the ground that the state courts have no jurisdiction of the subject matter, the action being based on an interstate

shipment of property governed exclusively by an act of congress. We are of the view that such interstate shipments are governed exclusively by the provisions of the Federal law, and that the state law upon that subject has been superceded, to the extent that Congress has acted by passing a law governing the same subject matter. Adams Express Company v. Croninger, 226 U. S. 491, 33 Sup. Ct. Rep. 148, 57 L. Ed. 44, L. A. R. (N. D.) 257. But we are also of the view that from this is does not necessarily follow that the state courts have no jurisdiction to entertain and determin causes involving civil rights governed by the Federal law, unless there is some public policy or positive statute forbidding such jurisdiction. We are of the view that the state courts have concurrent jurisdiction with the Federal courts of causes of action of the nature of the case at bar. Galveston Ry. Co. v. Wallance, 223 U. S. 481, 32 Sup. Ct. Rep. 205, 56 L. Ed. 516.

[2] It is contended that the evidence is insufficient to sustain the verdict, and that the verdict is excessive. Plaintiff alleged two separate causes of action: (1) For alleged injuries to one carload of his stock, consisting of ten mules and thirteen horses, shipped from Salem, S. Dak., to E. St. Louis, Ill., in March, 1912, one of which horses is alleged to have been lost in transit through the negligence of defendant, the particular negligence alleged to have caused such injuries consisted in delay in transportation and rough handling of the train on which the same were carried; (2) for alleged injuries to one carload of horses shipped from Salem to Chicago in April, 1912, the particular negligence alleged to have caused such injuries consisted in delay in transportation and rough handling of the train on which the same were carried. As applied to the first cause of action there is no evidence of any delay on the part of defendant in the transportation of said car of stock. There is no testimony as to what was a reasonable or proper space of time within which said car-load of mules and horses might or should have been transported. The only evidence as to rough handling of the car or train carrying this stock was that of one J. A. Jackson, who accompanied said car over a portion of the route, who testified: "I remember going into Council Bluffs that they were roughly handled—they bumped them around and brought us up standing

a good many times, standing in the caboose,—the slacking of the train,—it was a long train,—the car being next to the caboose got the slack more roughly than if it had been at the head end, —I was riding in the caboose at the time. I do not know whether any of the horses got knocked down,—it was in the night, I could not tell about that." There is nothing in this testimony tending to show that the injured condition of the said horses and mules was due to the rough handling of the train as testified to by this witness. It is a matter of common knowledge that in taking such long journeys on freight trains, stock, and especially horses, will, as a necessary and natural incident of the trip become more or less injured and are liable to more or less injure themselves, and this sort of injury will depend more or less upon the feed and water and other care bestowed upon such animals en route. What particular or general care as to feed and water was given these particular animals does not appear. Under the contract in evidence, under which these animals were shipped, it was the general duty of the shipper to feed and water these animals. The fact alone that this livestock was gaunted and sore and lame and bruised and was depreciated in value at the end of the journey does not of itself tend to prove that such condition was due to any negligent act or omission on the part of the common carrier. The burden is on the plaintiff to produce evidence the effect of which is to make it reasonably certain that the injury was a consequence of some negligent act or omission of the defendant carrier. There is no such evidence in this case. Under the contract under which these animals were shipped it was the duty of the shipper to feed and water these animals, and that the shipper should assume the risk of injury that such animals might do themselves. Of course, animals might do injury to themselves as the result of the failure of some duty of the carrier, under which circumstances the carrier might be liable; there is no such showing in this case. One thing is reasonably certain in this case and that is that one of the shippers of these animals who was on the ground when they arrived at their destination made no claim for damages for injury from rough handling or delay, but did make a claim for the loss of one horse,—that thirteen horses were delivered for carriage at Salem and only twelve were de-

delivered to the shippers at E. St. Louis,—clearly indicating that the claim for injury by reason of delay or rough handling was an afterthought.   Under the evidence, plaintiff was entitled to a verdict and judgment not to exceed $100.00 for this lost horse, the contract having fixed the value   of   each animal and the amount of recovery therefor at not to exceed $100.00 per head.

[3] The evidence in relation to the second cause of action does show there was delay in transportation.   The testimony shows that the animals included in the shipment to Chicago were loaded at Salem on Saturday evening and did not arrive in Chicago until the following Wednesday morning, and that the ordinary running time for a stock train between Salem and Chicago is about thirty hours; but the undisputed evidence also shows that on Saturday, the 20th day of April, the day on which these horses were delivered to defendant for transportation, the defendant had three trains leave Salem on which live stock might have been shipped to Chicago.   The scheduled time for the first of these trains was about 11 A. M.,—prior to the arrival of this train plaintiff had informed the agent of the company that he desired to ship a car of horses.   Some time before the arrival of this train the agent notified plaintiff that the train was about on time, and plaintiff stated that his horses were not then ready for loading.   The agent then notified plaintiff that a special stock train would be along in the middle of the afternoon; the agent notified plaintiff of the approach of this train, but plaintiff was not there with his horses, and the train could not be held, and plaintiff then inquired if he could not ship on No. 26, the Sioux City Stock train, and was informed by the agent that he would have to take his chances on that train; that there were no Chicago connections with that train on Sundays. These horses were not delivered for shipping until about eight o'clock in the evening and the train left Salem about nine o'clock P. M. The first two trains went through to Chicago in about thirty-six hours.   The train No. 26 arrived at Sioux City early Sunday morning, and plaintiff found that no stock train was scheduled to leave for Chicago until Monday evening.   The horses were unloaded at the stock yards and were exposed to rain and sleet and remained there until Monday evening;  the horses arrived at their destination in a gaunted, bitten, bruised,

sore, and lame condition; plaintiff caused a written claim to be presented to defendant for injuries caused by delay, and for bruising and crippling six head of horses. We are of the view that the defendant was in no manner responsible or negligent in connection with the delay in this shipment, that plaintiff took his chances and assumed the risk of delay when he shipped on the Sioux City stock train. There is no evidence at all of any improper or rough handling of the train on which this shipment of horses was made, and what is said as to damages for this character of injury in relation to the first cause of action applies to the second cause of action. There are no allegations in the complaint seeking, or sufficient, to charge the defendant with negligence in not maintaining proper stock yards at Sioux City to protect such animals from inclement weather.

The judgment and order appealed from are reversed and the cause remanded for new trial.