HARRY M. PAYNE, APPELLEE, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, APPELLANT.

FILED APRIL 15, 1916.    No. 18637.

Carriers: SHIPMENT OF LIVE STOCK. In the absence of a special contract, or special circumstances which take the case out of the general rule, a carrier of live stock is not bound to use extraordinary means to forward a shipment of stock. In such case the shipper will be held to have consented to the carriage of such stock by the regular trains of the carrier on its ordinary schedules.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed and dismissed.*

*Crofoot, Scott & Fraser,* for appellant.

*Earl R. Ferguson* and *Harry W. Shackelford, contra.*

FAWCETT, J.

From a judgment of the district court for Douglas county, in favor of plaintiff, in an action for damages for alleged negligence of defendant in failing to transport, within a reasonable time, a shipment of live stock, defendant appeals.

The case was submitted to the court upon a stipulation of facts as follows:

"It is hereby stipulated by and between the parties hereto that the plaintiff in the above-entitled case delivered the shipment referred to in his petition, consisting of twenty-nine (29) head of cattle and three (3) head of calves, to the defendant company at Luther, Iowa, for transportation to South Omaha, Nebraska, between 5:30 and 6 o'clock P. M., on May 1, 1911, and that the defendant's train conveying the said shipment left Luther at about 6:15, and arrived at Madrid at 6:45 P. M. That the shipment arrived at Council Bluffs, Iowa, at 5:15 P. M., on May 2, 1911, and was delivered at the stock-yards chutes in South Omaha at 9:30 o'clock the same evening.

"That the distance from Luther to South Omaha by way of the lines of the defendant and connecting carriers is one hundred sixty-three and six-tenths (163.6) miles. That the time consumed by the defendant in transporting this shipment is about twenty-seven and one half (27½) hours.

"It is further stipulated that the station of Luther is on a branch line of the defendant railroad, about seven (7) miles distant from Madrid, which is the junction point connecting the said branch with the defendant's main line between Omaha and Chicago. That Perry is the first division station west of Madrid on the defendant's line and is one hundred thirty (130) miles from South Omaha. That the

defendant's printed time schedules show that the first reg-
ular freight train is due to leave Madrid at 2:10 o'clock
A. M., and is due to arrive at Council Bluffs at 5:30 o'clock
P. M. of the same day, and to arrive at Omaha at 8 o'clock
P. M. on the same day. That the usual time required to
deliver shipments from Omaha to the stock-yards chutes in
South Omaha is about one and one-half (1½) hours. That
the said schedules show that the regular freight trains
leaving Omaha east-bound maintain an average speed of
eighteen (18) miles per hour between Omaha and Madrid,
including time consumed in stops at stations en route, and
also between Madrid and Chicago, Illinois. That this ship-
ment moved west from Madrid, Iowa, on the first train
down in the said schedule after the time of its arrival at
that point, the schedule time for the departure of the train
from Madrid being 2:10 o'clock A. M., and the schedule
time of arrival at Omaha, Nebraska, being 8 o'clock P. M.

"That no special contract was entered into or any agree-
ment made respecting the particular train said stock
should be transported on.

"That both the parties waive a jury and agree to try the
said case to the court. That neither party shall be under-
stood to waive objection to any of the foregoing facts, and
that the competency, relevancy and materiality of any of
the foregoing facts may be called in question by either
party at the trial of the said case. That either party may
at the trial of the said case offer further evidence bearing
upon the question of the defendant's unreasonable delay
in transportation of the said shipment, but it is agreed that
if the court, after hearing all of the evidence, should find
that the defendant failed to transport the said shipment
to destination with due diligence and without unreason-
able delay, the plaintiff shall have and recover judgment
from the defendant in the sum of fifty-six dollars and fifty-
nine cents ($56.59), with interest thereon at the rate of 7
per cent. per annum from May 2, 1911, to date, and his
costs."

From this stipulation it appears that Luther, Iowa, was on a branch line of defendant road. The cattle were delivered to defendant between 5:30 and 6 o'clock in the evening. They were at once loaded, and left Luther about 6:15, arriving at Madrid (seven miles distant) on the main line at 6:45. The first regular west-bound train due to leave Madrid was at 2:10 A. M. the following morning. It was due to arrive at Council Bluffs at 5:30 P. M., at Omaha at 8, and at South Omaha about an hour and a half later, or at 9:30. The stock was shipped from Madrid on that train. It arrived at Council Bluffs at 5:15, which was 15 minutes ahead of schedule time, and delivered at the stockyards chutes in South Omaha at 9:30. The distance from Luther to South Omaha is 163.6 miles. If the defendant is liable, it is not because it was guilty of negligence in not transporting the stock promptly under its published schedules, but because it was operating its trains under too slow a schedule.

In *Johnston v. Chicago, B. & Q. R. Co.,* 70 Neb. 364, we held: "In order to recover damages for an alleged delay in the shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose." This holding was later approved and followed in *Cleve v. Chicago, B. & Q. R. Co.,* 77 Neb. 166. We think the evidence was insufficient to take this case out of the rule there announced.

In *Pine Bros. v. Chicago, B. & Q. R. Co.,* 153 Ia. 1, it is held: "A railway company is not required to attach a freight car carrying live stock to a passenger train to hasten its delivery; and where it transports the same by its usual freight trains on schedule time, and there is no evidence that there were faster freight trains by which the destination could have been sooner reached, it is not liable for the death of an animal, the result of sickness, while in transit." In the opinion it is said: "The defendant's

freight schedules upon which the road was then being operated were so arranged that a car sent out of Bushnell on the afternoon or evening of May 5, 1908, and making all the connections provided for in said schedules, would not arrive in Diagonal until about noon of May 8. There is no claim that plaintiffs did not fully understand the time required to make this trip, or that they asked for or received any assurance that the progress of their car could or would be accelerated beyond the rate indicated by the schedule."

In *Johnson v. New York, N. H. & H. R. Co.*, 111 Maine, 263, it is held: "(4) In the absence of a special contract, or of special circumstances which take the case out of the general rule, the carrier is not bound to use extraordinary means to forward even perishable freight." "(6) The shipper must be understood to contemplate carriage by the regular trains on the ordinary schedules. If he desires special service, he may contract for it."

In *Tiller & Smith v. Chicago, B. & Q. R. Co.*, 142 Ia. 309, it is held: "Unless the carrier contracts to deliver stock by a special train, it may make such reasonable train schedules as are proper to the ordinary and economical conduct of its business, having regard to the nature of the stock to be transported."

Four Texas cases and one from Oklahoma are cited, which seem to be in conflict with the foregoing authorities and to sustain plaintiff's contention. We have carefully examined those cases, but they have failed to satisfy us that the rule announced in our own cases and in the cases' from Iowa and Maine, above cited, are unsound. When this shipment was made, plaintiff was charged with knowledge of the published schedules of defendant. That they were published is admitted in the stipulation, and no denial of knowledge thereof by plaintiff is claimed. He therefore knew that the stock which he delivered to defendant at Luther, Iowa, at 5:30 in the evening of May 1 could not possibly, under those published schedules, reach South Omaha in time for the next day's market, nor until late

in the evening of that day. Under the authorities upon which we prefer to rely, he made his shipment, knowing that it would be made in accordance with those schedules, and without asking for or receiving any agreement or intimation from the defendant that the progress of his shipment "could or would be accelerated beyond the rate indicated by the schedule."

Plaintiff having failed to sustain the allegations of his petition, and it being clear that all of the evidence which could be produced by him in support of his claim is contained in the stipulation, the judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

SEDGWICK and HAMER, JJ., not sitting.