## JANESVILLE LIVE STOCK & SHIPPING ASSOCIATION AND OTHERS v. WALKER D. HINES, DIRECTOR GENERAL, AND ANOTHER.[1]

### July 2, 1920.

### No. 21,860.

**Carrier must deliver within reasonable time — unusual delay.**
    1. A carrier, although not an insurer of the time of delivery, must

[1] Reported in 178 N. W. 739.

deliver within a reasonable time, and in case of a great and unusual delay must show that it was not caused by his negligence.

**Notice to shippers of delays indicated by railway time schedules.**

2. Shippers must take notice of the railway time schedules in force at the time of the shipment, and a carrier who transports and delivers in accordance with such schedules cannot be charged with negligence on account of delays shown thereon, in the absence of a special contract to make an earlier delivery.

**Inference of negligence rebutted.**

3. The inference of negligence arising from the length of time consumed in transporting the shipment in question was overcome by showing delivery according to the time schedules then in force.

Action in the municipal court of Waseca to recover $182.10 for losses caused by delay in transportation of live stock. From a judgment entered in favor of plaintiff, defendant appealed to the district court for that county where the appeal was heard by Childress, J., who when defendants rested denied their motion for a directed verdict, and a jury which returned a verdict for the amount demanded. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Richard L. Kennedy, Fred G. Wright* and *George F. Dames,* for appellants.

*Henry M. Gallagher.* and *Moonan & Moonan,* for respondent.

TAYLOR, C.

On September 16, 1918, at seven o'clock in the evening, plaintiff delivered two carloads of stock to defendant at Janesville, Minnesota, to be transported over the Chicago & Northwestern Railway, commonly known as the "Northwestern," from that point to Mankato, a distance of 18 miles, and over the Chicago, St. Paul, Minneapolis & Omaha Railway, commonly known as the "Omaha," from Mankato to South St. Paul, Minnesota, a distance of 82 miles. The stock arrived at the stockyards at South St. Paul at 9:05 p. m. on the evening of September 17, 1918, too late for the market of that day. On the following day the market price for such stock was considerably less than on the seventeenth. Claiming that defendant was negligent in failing to deliver the stock in

time for the market of the seventeenth, plaintiffs brought this action to recover the losses sustained by reason of the delay. The jury returned a verdict for plaintiffs, and defendant appealed from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

The principal question for consideration is whether the evidence sustains the finding that defendant negligently failed to transport and deliver the stock within a reasonable time.

The plaintiffs presented evidence that, for many years prior to this shipment, stock delivered at Janesville at about seven o'clock in the evening had been transported over these same railways to the stockyards at South St. Paul in time for the market the following day.

The carrier is not an insurer of the time of delivery, but is required to exercise diligence and to deliver within a reasonable time under all the circumstances. If the delay be great and unusual the burden is on him to explain how it happened and to show that it was not caused by his negligence. National Elev. Co. v. Great Northern Ry. Co. 141 Minn. 407, 170 N. W. 515, and cases there cited.

The Northwestern railway runs in an easterly and westerly direction through Janesville and Mankato. The Omaha runs in a northerly and southerly direction through Mankato to Merriam, from which point one branch runs to Minneapolis and another to St. Paul. Stock cars destined for the stockyards at South St. Paul are carried by the train to Western avenue in St. Paul, from which point they are switched to the stockyards, a distance of several miles. This switching operation usually occupies somewhat less than two hours. Defendant had no trains which made a continuous run from Janesville to St. Paul. The route was from Janesville to the junction with the Omaha at Mankato, and from this junction to Merriam, and thence to St. Paul. The time schedules of defendant's trains, in force at the time of this shipment, were put in evidence by stipulation. These schedules show that the train which took the stock from Janesville was due at Mankato at 9:25 p. m. of the same day, September 16; that the first train going north thereafter was a time freight through Merriam to Minneapolis which was scheduled to leave Mankato at 3:55 a. m. September 17, and to arrive at Merriam at

9:20 a. m. on the same morning, and that the next train going north was a way freight, which was scheduled to leave Mankato at 5:55 a. m., September 17, and to arrive at Merriam at 11:40 a. m. and at Western avenue at 2:15 p. m. on the same day. This way freight was the first train due at St. Paul which was scheduled to leave Mankato after the stock was received at Janesville. The stock was in fact carried from Mankato to Merriam on the time freight, and from Merriam to St. Paul on this way freight, and arrived at Western avenue at 5 p. m. on the seventeenth. That the stock was delivered at St. Paul by the first train able to deliver it at that point under the time schedules clearly appears and is undisputed. That this train was nearly three hours late at Western avenue is of no importance in view of the undisputed fact that if the train had been on time the stock could not have been delivered in time for the market of that day.

The delays which prevented plaintiffs' stock from reaching South St. Paul in time for the market of September 17 occurred at the junction points, and resulted from the fact that there was an interval of several hours between the arrival of the Northwestern train at Mankato and the departure from that place of the first train for St. Paul over the connecting line. This fact was shown by the railway time schedules of which shippers were bound to take notice. The Wisconsin court, in speaking of a similar situation, said:

"The evidence clearly shows that the transportation of the horses from Oconto to Sidnaw proceeded according to the ordinary and regular course of train. The route from Oconto to Sidnaw was not a continuous line, but a combination of various lines connecting at junctions, but not traversed by any train for the whole distance continuously. At these junctions there were delays of hours at a time, which were indicated upon the scheduled time-tables of the defendant company, and of which shippers must take notice, and which, consequently, can form no ground for a charge of negligence." Burns v. Chicago, M. & St. P. Ry. Co. 104 Wis. 646, 80 N. W. 927.

The doctrine of the Wisconsin court is supported by the weight of authority, and a shipper is deemed to have consented to the carriage of his stock by the regular trains of the carrier in the absence of a special

contract for special service and an earlier delivery, and the carrier cannot be charged with negligence on account of delays, if it transports the stock according to its established schedules. Payne v. Chicago, M. & St. P. Ry. Co. 99 Neb. 699, 157 N. W. 613; Pine Bros. v. Chicago, B. & Q. R. Co. 153 Iowa, 1, 133 N. W. 128, 39 L.R.A.(N.S.) 639; Johnson v. New York, N. H. & H. R. Co. 111 Me. 263, 88 Atl. 988.

The plaintiffs rely on decisions in Oklahoma and Texas to the effect that, although the carrier transported the stock in accordance with its time schedules, evidence tending to show that the time consumed in the transportation was longer than was reasonably necessary for that purpose, makes the question of whether delivery was made within a reasonable time a question of fact for the jury. St. Louis & S. F. R. Co. v. Shepard, 40 Okla. 589, 139 Pac. 833; Buel v. St. Louis & S. F. Ry. Co. 163 Pac. 536; St. Louis, S. F. & T. Ry. Co. v. Armstrong (Tex. Civ. App.), 166 S. W. 366.

We find no decision of this court in which the precise question here involved was directly passed upon, but Anderson v. Great Northern Ry. Co. 126 Minn. 352, 148 N. W. 462, indicates that the views of this court are in harmony with the prevailing rule.

In the present case there was no special contract, but plaintiffs adduced sufficient evidence to impose on defendant the burden of showing that the failure of the stock to arrive at its destination in time for the market of September 17 did not result from delays caused by his negligence. To meet this burden defendant established the fact that it delivered the stock in time for the earliest market for which it could have been delivered under the railway time schedules in force when the shipment was made. This overcame the inference of negligence arising from the length of time consumed in the transportation, and, as no negligence other than delay was charged or claimed, there was no question for the jury. The record does not show what schedules were in force when the prior shipments were made, nor how it happened that such shipments were transported in half the time required for the present shipment. It is a matter of common knowledge, however, that during the time that the railroads were operated by the government many changes were made in train schedules to meet various exigencies as they arose, and in the ab-

sence of any showing to the contrary we must assume that the schedules were properly adopted and were justified by existing conditions.

Order reversed.