PETRO, Respondent, v. DAVIS, Director General of Railroads, Appellant.

(195 N. W. 504.)

(File No. 5156.   Opinion filed October 26, 1923.)

1. **Carriers—Contracts—Negligence—Live Stock Shipments—Ordinarily Shipper of Live Stock Consents to Transportation by Regular Trains.**

    In the absence of a special contract or special circumstances, a carrier is not bound to use extraordinary means to forward a shipment of live stock, and shipper consents to the carriage of such stock by the regular trains on the ordinary schedules.

2. **Carriers—Railroads—Carrier Entitled to Make Schedules for Shipment of Live Stock That Are Reasonably Economical.**

    Unless a carrier undertakes to carry live stock by a special train. it may make such reasonable train schedules as may be proper to the ordinary and economical conduct of its business, though the nature of the stock must be considered.

3. **Carriers—Evidence—Negligence—Evidence Held Insufficient to Support Recovery for Delay in Transportation of Cattle.**

    In an action for negligent delay in transporting cattle, resulting in alleged loss of weight and decline in market value, evidence that the freight schedule from the point of shipment to the point of destination was 69 hours and 35 minutes and the time actually taken to transport plaintiff's cattle was 77 hours and 15 minutes, and if the cattle had been transported on schedule time they would not have been received at their destination until too late for Thursday's market. and they were

marketed the following day, held insufficient to support a recovery.

Appeal from Circuit Court, Fall River County; Hon. WALTER G. MISER, Judge.

Action by Charles A. Petro against James C. Davis, Director General of Railroads in charge of Chicago, Burlington & Quincy Railroad. Judgment for plaintiff, and defendant appeals. Reversed.

Byron Clark and J. W. Weingarten, both of Omaha, Neb., and E. B. Adams, of Hot Springs, for Appellant.

W. A. Guilfoyle, of Edgemont, and Helm & Lewis, of Hot Springs, for Respondent.

Appellant cited: Act of Congress, June 29, 1906; Payne v. C., M. & St. P. Ry. Co., 157 N. W. 613; Tiller & Smith v. C. B. & A. Ry. Co., 142 Ia. 309, 120 N. W. 672; Janesville Live Stock & Shipping Co. et al v. Hines, 178 N. W. 739; Cleve v. C., B. & Q. Ry. Co., 108 N. W. 982; Jackson v. C. & N. W. Ry. Co., 34 S. D. 153, 147 N. W. 732; C. B. & Q. Ry. Co. v. Todd, 105 N. W. 83; Peterson v. C., M. & St. P. R. R. Co., 19 S. D. 122; Johnston v. Railroad, 70 Neb. 364, 97 N. W. 479; Gulf R. R. Co. v. Porter, 25 Tex. Civ. App. 491, 61 S. W. 343; St. L. & S. F. R. Co. v. Zickafoose, 39 Okl. 302, 135 Pac. 406; 10 C. J. 407; Payne v. C., M. & St. P. Ry. Co., 157 N. W. 613.

Respondent cited: St. Louis, etc., Ry. Co. v. Shepherd (Okla.), 139 Pac. 833; St. Louis, etc., Ry. Co. v. Peery (Okla.), 138 Pac. 1027; M. K. & T. Ry. Co. v. Dunn (Tex.), 157 S. W. 434; St. Louis, etc., Ry. Co. v. Armstrong (Tex.), 160 S. W. 366; Texas et al Ry. Co. v. Currie (Tex.), 76 S. W. 810; A. T. & S. F. Ry. Co. v. Merchants' Live Stock Co., 273 Fed. 130.

ANDERSON, P. J. Action brought by plaintiff and respondent, Charles A. Petro, against defendant and appellant, James C. Davis, Director General of Railroads in charge of Chicago, Burlington & Quincy Railroad, to recover the sum of $985 and interest, which amount plaintiff claims he was damaged by reason of negligence of defendant in transporting 134 head of cattle of plaintiff from Edgemont, this state, to South Omaha, Neb. It is claimed by plaintiff that on account of defendant's negligence in course of transportation and unreasonable delay in

such transportation said cattle lost in weight 50 pounds each, and by reason of the delay plaintiff was compelled to accept 25 cents per hundred less than he would have received had no delay occurred. Defendant denies that he was negligent in transportation of the cattle, or that any unreasonable delay occurred, claiming that the cattle were transported without carelessness or negligence on his part, and that shipment was made within time provided in the regular schedule published by defendant; that he was operating said railroad under an act of Congress entitled "An act to regulate commerce"; that the shipment of cattle was loaded in five cars, two of them being shipped in the name of Lawrence Petro and three of them in the name of Charles A. Petro, the plaintiff; that the shippers at the time of loading of cattle entered into contracts which were identical in terms, and provided, among other things, that, in consideration of the transportation of the shipper, it was agreed that the animals contained in the shipment were to be in sole charge of the shipper. The evidence adduced at the trial disclosed that the cattle were loaded out of Edgemont November 17, 1919, at 8:45 p. m. and arrived in South Omaha Friday, November 21, 1919, about 2 a. m., and were placed on that day's market. Evidence discloses that the cattle were sold in different bunches, and brought from $8 to $9.40 per hundred, a few cows about 6½ to 7 cents per pound. Plaintiff introduced copies of the Daily Drover's Journal-Stockman of South Omaha under dates of November 20 and 21, 1919, showing the price at which stock sold on November 20th was about the same as on the 21st. It is undisputed that on November 17, 1919, there was daily but one scheduled freight train running between Edgemont and South Omaha, which left Edgemont at 7:10 a. m., due to arrive at Alliance, Neb., at 4:30 p. m., and leaving Alliance at 6:30 p. m., arriving at Lincoln following day at 9:30 p. m., and leaving for Omaha at 12:45 a. m., arriving at South Omaha 4:45 a. m. It appears that the cattle were unloaded and fed at Alliance in evening of November 18th, brought down to Lincoln Wednesday evening about 10 o'clock, November 19th, where they were again unloaded and reloaded out of Lincoln on Thursday evening, November 20th, arriving at South Omaha Friday morning, November 21st.

[1, 2] No claim is made by plaintiff that defendant was negligent in unloading the cattle and feeding them in transit.

"In the absence of a special contract, or special circumstances which take the case out of the general rule, a carrier of live stock is not bound to use extraordinary means to forward a shipment of stock. In such a case the shipper would be held to have consented to the carriage of such stock by the regular trains of the carrier on its ordinary schedules." Payne v. Railway Co., 99 Neb. 699, 157 N. W. 613.

In the instant case no ellegation or proof was made or offered by plaintiff that any contract for special services had been entered into. Tiller & Smith v. Railway Co., 142 Iowa 309, 120 N. W. 672:

"Unless a carrier undertakes to carry live stock by special train, it may make such reasonable train schedules as may be proper to the ordinary and economical conduct of business, though the nature of the stock must at all times be considered." Payne v. Railway Co., 99 Neb. 699, 157 N. W. 613.

"A carrier is not liable for the death of a horse due to the length of time taken in transportation, where it arrived at its destination substantially on schedule time, and there is no evidence that there were faster freight trains by which the destination could have been sooner reached; the failure to accelerate the movement by attaching the freight car to a passenger train not being negligence." Pine Bros. v. Ry. Co., 153 Iowa 1, 133 N. W. 128, 39 L. R. A. (N. S.) 639.

"In order to recover damages for an alleged delay in the shipment of live stock it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose." Johnston v. Ry. Co., 70 Neb. 364, 97 N. W. 479.

"Where, in an action alleging injuries through delay in transportation, and rough handling of live stock during shipment, under a contract requiring shipper to feed and water the animals, there was no evidence of delay, or as to what would constitute a reasonable time for transportation, or that the injured condition was due to rough handling, or as to what care was given as to feed

and water, and no claim for damages for delay or rough handling was made by shipper at destination, held, that a verdict for plaintiff for such injuries was unauthorized." Jackson v. Ry. Co., 34 S. D. 153, 147 N. W. 732.

[3] The scheduled time of the freight train from Edgemont to South Omaha was 69 hours and 35 minutes. The time actually taken to transport plaintiff's cattle was 77 hours and 15 minutes, an excess of 7 hours and 40 minutes; but if they had been transported on schedule time they still would not have been received at South Omaha until Thursday night, November 20th, at 6:20, and would therefore not have been available for Thursday market.

At the close of all the testimony defendant moved the court to instruct the jury to return a verdict in favor of the defendant on the following grounds: (1) That the complaint does not state facts sufficient to constitute cause of action against defendant; (2) that the evidence is insufficient to sustain a verdict in favor of plaintiff—which motion was denied.

In view of the facts and the law applicable we conclude that the order and judgment of the trial court should be reversed; and it is so ordered.

Note.—Reported in 195 N. W. 504. See, Headnote (1), American Key-Numbered Digest, Carriers, Key-No. 213, 10 C. J. Sec. 407; (2) Carriers, Key-No. 213, 10 C. J. Sec. 407; (3) Carriers, Key-No. 228(5), 10 C. J. Sec. 439.

On duty of carrier to take precautions to prevent loss from delay in shipment of live stock, see notes in 39 L. R. A. (N. S.) 640, 642, 644.