**CHICAGO, R. I. & P. RY. CO. v. LAWTON GRAIN CO.**

No. 11949—Opinion Filed Oct. 23, 1923.

Rehearing Denied Jan. 15, 1924.

1. **Carriers—Carriage of Grain—Negligent Delay—Jury Questions.**

   In an action against a common carrier to recover damages for negligent delay in the interstate transportation of a carload of wheat, where the evidence reasonably tends to show that the carrier failed to transport the wheat within a reasonable time, it is sufficient to take the question of negligence to the jury, and the question as to what is a reasonable time for the transportation of the wheat and as to the reasonableness and sufficiency of the excuse which the carrier makes for its delay then becomes a question for the determination of the jury under proper instructions from the court.

2. **Evidence — Opinion Evidence — Time for Transportation of Grain.**

   Where a party has been engaged in shipping wheat from one point to another over a line of railroad for a period of 18 years, during which time he had frequently shipped wheat over said line of railroad, and states that he knows the reasonable time required for making the trip, he should be permitted to so testify.

3. **Same—Market Values.**

   Where a witness testifies that he knows the market value of wheat at a certain place on given dates, he may be called upon to state such value, and it is not error to permit him to so testify.

4. **Carriers—Damages for Delayed Shipment—Proof.**

   Record examined, and held, that under the evidence admitted the damages awarded plaintiff by the jury were reasonably established.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Comanche County; Cham Jones, Judge.

Action by the Lawton Grain Company against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. O. Blake, A. T. Boys, W. R. Bleakmore, and W. F. Collins, for plaintiff in error.

E. L. Richardson, for defendant in error.

Opinion by FOSTER, C. This action was commenced in the district court of Comanche county, Okla., on the 29th day of October, 1917, by the Lawton Grain Company, a corporation, defendant in error, plaintiff below, against the Chicago, Rock Island & Pacific Railway Company, a corporation, plaintiff in error, defendant below, to recover damages for the failure to deliver within a reasonable time a carload of wheat which the defendant in error had delivered to the plaintiff in error to be transported from Mountain View, Okla., to St. Louis, Mo. The parties will be hereinafter referred to as they appeared in the court below.

The petition alleged that the defendant negligently failed to transport and deliver said car of wheat within a reasonable time. It was alleged that said car of wheat contained 1,430 1-5 bushels, and was received by the defendant for transportation on the 1st day of August, 1917, but failed to reach its destination until August 13, 1917; that if said car of wheat had been transported within a reasonable time it should have reached St. Louis on the 5th day of August, 1917, and that the plaintiff had been damaged by reason of the delay in the sum of $672.18, representing the difference in the market value of said wheat on the date it should have been delivered at St. Louis, and the date on which it was actually delivered.

The defendant admitted that it was a corporation and owned and operated a line of railroad between the city of Lawton, Comanche county, Okla., and St. Louis, in the state of Missouri, and denied all other allegations of the petition.

There was a trial to a jury and judgment for the plaintiff in the sum of $429.06, and the defendant appeals, and assigns as error the action of the trial court in overruling its motion for a new trial.

A stipulation was admitted in evidence on behalf of the plaintiff showing the movement of the car in question from Mountain View, Okla., to St. Louis, Mo. Omitting the caption, the stipulation is as follows:

"It is hereby stipulated and agreed between the parties hereto that the following facts may be admitted as evidence in this case:

"That C., R I. & P. Ry. Co., car number 31816 loaded with bulk wheat consigned to order of Lawton Grain Company, destination Kansas City. Missouri, notify Lawton Grain Company Kansas City, Missouri; shipper Lawton Grain Company vs. D. E. McBride; loaded at Mountain View, Oklahoma, train number 788, August 2, 1917, and arrived Chickasha, Oklahoma, August 2, 1917, 6:30 p. m., and was there reconsigned to Lawton Grain Company, Saint Louis, Missouri, notify Langenberg Brothers Grain Company.

"Left Chickasha, Oklahoma extra 2115 August 3, 1917, 11:15 p. m., arrived El Reno same train August 4, 4:30 a. m.

"Left El Reno extra 1738 August 4, 1:30 p. m., arrived at Caldwell, Kansas, 11:10 p. m., same train and date.

"Left Caldwell, extra 2124 August 5, 2:35 a. m., set out of train Cline, Kansas, August 5th, train proceeding to Herrington where it arrived 3:40 p. m., same date.

"Left Cline, August 8th, extra 1966, which train left Caldwell, August 7th, 9:15 p. m. and arrived at Herrington, August 8th. 10:00 a. m.

"Left Herrington extra 1749 August 9, 12:50 a. m., set out at Topeka August 9th, 7:00 a. m., train extra 1748 arriving at Kansas City August 9th, 2:10 p m.

"Left Topeka extra 2010 August 9th, 9:00 p. m., train having left McFarland August 9th, 5:00 p. m., arrived Kansas City August 10th, 2:30 a. m. same train.

"Left Kansas City train 96 August 11th, 7:10 a. m., arrived Eldon, Missouri, 4:10 p. m., same day and train.

"Left Eldon 5:00 p. m., same day and train. Set out at Belle, Missouri, train 96 arriving Saint Louis 7:00 a. m., August 12th.

"Left Belle train 82 August 13th, 6:20 a. m., arrived Carrie Avenue Station Saint Louis August 13th, 1917, 3:50 p. m."

The stipulation thus admitted in evidence shows that the car was in transit from Mountain View, Okla., to St. Louis, Mo., about 11 days. The evidence on behalf of plaintiff further discloses that the plaintiff had been engaged in the grain business. some 20 years and frequently, during that

time, had shipped wheat over the defendant's line of railroad to St. Louis, Mo., from Mountain View, Okla., and other points in the vicinity of Mountain View, and that a reasonable time for the movement of a car of wheat from Mountain View to St. Louis, Mo., based upon previous knowledge and experience in shipping wheat, was from six to eight days. That another car of wheat, originating at Devol, Okla., in the vicinity of Mountain View, was shipped by the plaintiff on August 1, 1917, and arrived in St. Louis, was delivered, inspected, and sold on August 7, 1917.

Evidence was introduced that on August 10, 1917, when the car should have arrived in St. Louis. No. 3 Oklahoma Hard Wheat was selling on the St. Louis market at $2.80 per bushel; and that on August 15, 1917, the date on which the car was finally inspected and delivered to the consignee, the same wheat was selling for $2.50 per bushel; that the wheat in question was finally sold on August 22, 1917, for $2.38 per bushel.

It is in evidence that under the laws of the state of Missouri, it was necessary to have the wheat in question inspected by a licensed grain inspector, and that this inspection was not made until August 15, 1917.

Defendant first contends that the evidence is insufficient to support the verdict, because (1) there was no competent evidence to prove damages, and (2) no damages were proven under the evidence admitted.

We cannot agree with counsel in this contention. It is insisted that the trial court erred in permitting the plaintiff to give his opinion as to what he considered a reasonable time for the movement of a car of wheat from Mountain View, Okla., to St. Louis, Mo., without qualifying himself as a witness. It is sufficient to say that this contention is met and overthrown by the holding of our Supreme Court in the case of Dickinson et al. v. Seay, 72 Oklahoma. 175 Pac. 216, where the court said:

"The plaintiff testified that he had been engaged in the business of buying and shipping cattle for the past 30 years and had shipped over the Rock Island, principally to Kansas City, ever since the railroad was built; that he shipped 15 or 20 carloads of cattle a year during this time from Ryan, Oklahoma, to Kansas City, Missouri, and that the usual time required for a shipment to go from Ryan to Kansas City was from 28 to 35 hours. he having made it in less time than 28 hours; that Oklahoma City

is nearer Kansas City than Ryan, it being something like 100 miles nearer, in his opinion.

"Frank Witherspoon, Jr., testified that he had been engaged in the cattle business at Kansas City, Missouri, and at Oklahoma City, Oklahoma, since he was 18 years old; that he had been selling on the Kansas City market for the past 9 years, with the exception of about 9 months when he sold cattle at Oklahoma City; that he had shipped cattle from Oklahoma City to Kansas City; and that from 28 to 30 hours was the usual and customary time for shipments to come from Oklahoma City to Kansas City over the Rock Island lines.

"We are of the opinion that this evidence was admissible."

It is further argued that no competent evidence was introduced as to the price of wheat in St. Louis on the date the wheat should have arrived, and on the date on which it did arrive, for the reason that the witnesses had not shown themselves qualified to testify as to market values of the wheat on the dates mentioned. The witness Burks testified that he was connected with the firm of Langenberg Bros. Grain Company in St. Louis, who were engaged in selling wheat on the St. Louis market, and that he was familiar with the price of wheat on the St. Louis market at the time the car of wheat should have arrived, and at the time it actually did arrive, and he was permitted, over the objection of the defendant, to state the price per bushel on the St. Louis market of No. 3 Oklahoma hard wheat, from August 4, 1917, up to and including August 22, 1917.

In the case of Montana Railway Company v. Charles S. Warren et al., 137 U. S. 348, 34 L. Ed. 681, the court said:

"After a witness has testified that he knows the property and its value, he may be called upon to state such value. The means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination. And it is fully open to the adverse party, if not satisfied with the values thus given, to call witnesses in the extent of whose knowledge and the weight of whose opinion it has confidence."

In the case of Midland Valley Ry. Co. v. Larson, 41 Okla. 360, 138 Pac. 173, complaint was made that the plaintiff was permitted to testify as to the market value of the sheep on the date they were brought in and on the date they were shipped out, and also as to the market value of such sheep on the market at Kansas City on the date they would have reached the market if transported with reasonable dis-

patch, and the date on which they did reach the market. In denying the contention that the evidence admitted was incompetent, the court said:

"Likewise his knowledge as to the time it usually took, under ordinary circumstances, to make the trip from Hardy, Oklahoma, to Kansas City was a matter which might be well understood, well known by any person engaged in the shipping business as long as this witness had been engaged. We think the testimony was correctly admitted, the witness having stated that he knew the market value of the stock and the time which, under ordinary circumstances, was required for transporting same from the point of shipment to the point of destination."

We cannot agree with counsel that under the evidence admitted no proof of damages is shown. The evidence is clear that the car in question was not inspected and ready for delivery to the consignee until August 15, 1917, and that wheat was selling on the St. Louis market on that date for 30 cents per bushel less than it was selling on August 10, 1917, the date on which, under the plaintiff's testimony, the car should have arrived.

It is obvious that the jury in its verdict for $420.06 allowed plaintiff 30 cents per bushel depreciation in market price against a depreciation of 47 cents per bushel, as claimed by the plaintiff.

It is next insisted by the defendant that the burden of proof is on the plaintiff to prove affirmatively that the delay was the result of the negligence of the defendant, and in support of this proposition argues that the rule announced by the Supreme Court of this state as to the burden of proof does not apply, but must be controlled by the rule in the federal courts. Counsel for defendant, however, do not favor us in their brief with a citation of any controlling federal statute, and the federal decisions which counsel cite do not appear to be in point.

The case of Southern Railway Company v. Prescott, 240 U. S. 632, cited by counsel for defendant, was a case where the liability of the railway company was that of a warehouseman; and the case of New Orleans & Northwestern R. R. Co. v. Harris, 247 U. S. 367, was an action for personal injury to an employ of the railway company, and in both of these cases the court very properly held that the burden of proving negligence affirmatively was upon the plaintiff, and such, as we understand it, is the rule in this state in like cases. However, the rule at common law

and in this state as to the burden of proof in actions to recover damages for delay in a shipment of merchandise against a carrier doing an interstate business is not so rigorous as obtains in the case of a warehouseman, or where the relation of master and servant exists. Neither is the rule based upon the liability of the carrier as an insurer, for it must be borne in mind that the railroad carrier is not an insurer against the occurrence of delays, hence is not liable where the delay is attributable to misfortune or unavoidable accident. Elliott on Railroads, vol. 4, sec. 1483.

The correct rule is not to be tested by any of the requirements set out above, but is deducible to a great extent from the circumstances surrounding each case. As was said by Mr. Elliott in his work on Railroads, vol. 4, page 436:

"There is no fixed rule of law to determine what will or will not constitute an unreasonable delay in a case. The carrier is in all instances bound to use ordinary care and diligence to avoid unreasonable delay, but many elements must be taken into consideration in determining whether there was or was not unreasonable delay in a particular instance."

In the case of Dickinson et al. v. Seay, 72 Oklahoma, 175 Pac. 216, supra, the Supreme Court of Oklahoma laid down the rule, as follows:

"In an action against a common carrier to recover damages for the negligent delay in the interstate transportation of cattle, where the evidence reasonably tends to show that the carrier failed to transport the cattle within a reasonable time, it is sufficient to take the question of negligence to the jury, and a presumption of negligence is not explained or rebutted by positive evidence on the part of the carrier that the regular schedule of its first train after the cattle were received by it for shipment, and by which train the cattle were moved, would not enable it to deliver the cattle at their destination within a reasonable time."

In the case of St. Louis & S. F. R. Co. v. Peery, 40 Okla. 432, 138 Pac. 1027, the Supreme Court of this state, quoting with approval the case of Anderson v. A., T. & S. F. Ry. Co., 93 Mo. App. 677, said:

"In Anderson v. A., T. & S. F. Ry. Co., 93 Mo. App. 677, plaintiff shipped over defendant's road three car loads of cattle from Marceline, Mo., to Chicago, Ill., for the market at that point. The suit was in damages for unreasonable delay in the shipment. No specific acts of negligence were made to appear; that is, no causes for delay were shown. The facts were, however, that plaintiff shipped the cattle at eleven o'clock a. m. on the 13th and they arrived at eleven o'clock a. m. on the next day, and that from thirteen to fifteen hours was the usual time for transportation between the two points.

"* * * The court held that this was sufficient to raise the presumption of negligence, and cast the burden on the defendant to explain the delay. * * *"

In the case of Buel, Pryor & Daniel v. St. Louis & S. F. R. Co., 65 Okla. 108, 163 Pac. 536, this court held:

"In order to recover damages for an alleged delay in the shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose."

In the case at bar evidence on the part of the plaintiff showed that plaintiff had been in the grain business in southwestern Oklahoma and shipping wheat over the route in question for 18 years, and that from six to eight days was a reasonable time for the movement of the car of wheat from Mountain View, Okla., to St. Louis, Mo.

We believe the evidence admitted on the part of the plaintiff reasonably tended to show that the defendant failed to transport the wheat within a reasonable time and was sufficient to take the question of negligence to the jury, and that from this testimony and other competent testimony in the case, it was the province of the jury to determine whether or not the time actually taken by the defendant for the transportation of the wheat was reasonable or unreasonable. Dickinson et al. v. Seay, 72 Oklahoma, 175 Pac. 216, supra.

It is true the defendant offered the evidence of several witnesses to show a reasonable movement of the car of wheat and the absence of negligence on its part. Its evidence tended to show the movements of the car, the time taken, and the various stations en route, and the manner of handling the different classes of freight out of the terminals and along the line. It offered evidence tending to show that delays on account of hot boxes were unavoidable, and that science had not discovered a method for the prevention of hot boxes, and that the car under all the circumstances received a reasonable movement. These matters, however, were for the determination of the jury under proper instructions from the court.

In the case of Dickinson et al. v. Seay, supra, our court held:

"* * * The question as to what is a reasonable time for the transportation of cattle, and as to the reasonableness and sufficiency of the excuse which the carrier makes for its delay, is for the determination of the jury under proper instructions from the court."

Furthermore, our court has held in a long and unbroken line of authorities that where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling upon law questions presented during the trial, then the verdict and finding of the jury is conclusive upon appeal and will not be disturbed by this court. Harris v. Owenby, 58 Okla. 667, 160 Pac. 596; Bunker v. Harding et al., 70 Oklahoma, 174 Pac. 749; Carden v. Humble, 76 Okla. 165, 178 Pac. 104; Lusk et al. v. Bandy, 76 Okla. 108, 184 Pac. 573.

Finding no reversible error, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.