ATCHISON, T. & S. F. RY. CO. v. RIDLEY.

No. 16652—Opinion Filed July 27, 1926.

Rehearing Denied Sept. 21, 1926.

1. Trial—Instructions—Covering Issues.

In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appropriate instructions the theory of the defense; and failure to do so, at the timely request of defendant, is reversible error.

2. Carriers—Interstate Shipment of Stock— Erroneous Instruction as to Time Required.

In a suit for damages to an interstate shipment of live stock made under the uniform live stock contract prescribed by the Interstate Commerce Commission, which provides that no carrier is bound to trans-

port live stock by any particular train or in time for any particular market, or otherwise than with reasonable dispatch, it is error to instruct the jury that it is the duty of the carrier to handle the shipment "expeditiously and with reasonable dispatch."

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Charles Ridley against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant appeals. Reversed.

Rainey, Flynn, Green & Anderson, and M. M. Gibbens, for plaintiff in error.

Suits & Hall, for defendant in error.

Opinion by RAY, C. A number of errors are assigned and argued in the briefs, but, in our view of the law, it is only necessary to consider one, that of error of the court in refusing to submit to the jury by appropriate instructions the theory of the defense.

The suit was for damages to a carload shipment of cows from Shattuck to Oklahoma City, alleged to have been caused by negligent delay and rough handling in transit.

The defendant, by its answer, joined issue on the allegations of negligence and damages and pleaded the terms of the contract between the parties, which was the uniform livestock contract prescribed by the Interstate Commerce Commission, which provides:

"No carrier is bound to transport said live stock by any particular train or vessel or in time for any particular market, or otherwise than with reasonable dispatch."

The plaintiff's evidence showed that the cattle were delivered to the defendant in its stockyard at Shattuck, Saturday, July 8th, and were delivered at their destination at Oklahoma City Tuesday morning, July 11th, about 61 hours from the time they were placed in defendant's stockyards at Shattuck. Plaintiff's evidence further showed that the cattle were delivered to the railway company at Shattuck in good condition and of the class known as "butcher" cattle; that when they reached the stockyards at Oklahoma City they were gaunt, their hair bad, indicating that they had not been properly fed and watered; that many of them were bruised, and by reason of that condition were classed as "low cutters": that the market value for "low cutters" was from $ .75 to $1.25 per hundred pounds less than for "butcher" cattle.

The railway company, to rebut the presumption of rough handling in transit raised by plaintiff's evidence that the cattle were in good condition when received and in bad condition when delivered at their destination, adduced evidence to show that the car reached Oklahoma City on the first train by which it could have been delivered and that there was no rough handling of the car in transit. It was shown by that evidence that the car was started in transit from Shattuck about 8:10 o'clock p. m., Saturday, July 8th, in the first train leaving Shattuck; that the car was taken by its regular train to Mulvane, Kan., where it was left on the siding for about five hours and picked up by the first train south on the main line for Oklahoma City, where it was delivered at its destination at 2:40 a. m., Tuesday, July 11th, being in transit about 54 hours. It was developed by cross-examination of defendant's witnesses that the usual and ordinary route for shipment of live stock from Shattuck to Oklahoma City was to Kiowa, Kan., thence over the defendant's short line to Guthrie, Okla., and south from Guthrie to Oklahoma City on its main line. Defendant's evidence further showed that there was no Sunday frieght train over the short line from Kiowa, Kan., to Guthrie and, for that reason, the shipment was transported by the longer route, but reached its destination at Oklahoma City on the same train, and at the same time, it would have reached Oklahoma City if transported over the shorter route. This evidence of defendant showed that the haul was 103 miles further than it would have been by the shorter route. The train men who handled the car from Shattuck to Oklahoma City testified that there was no rough handling of the car.

The defendant requested the court to give the following instruction to the jury, which was refused.

"4. You are instructed that by the terms of the live stock contract, executed by and between the plaintiff and the defendant, it was provided that the defendant would not transport the live stock by any particular train or in time for any particular market or otherwise than with reasonable dispatch. You are advised that this provision of the contract is valid and binding upon the plaintiff and defendant, and if you find from the evidence that the defendant received and transported the plaintiff's cattle with reasonable dispatch, then you are advised that the plaintiff is not entitled to recover any amount from said defendant, in so far as damages for delay are concerned."

It is contended by the defendant company

that, inasmuch as the shipment moved in interstate commerce, the provision of the contract providing that the carrier was not bound to transport the shipment otherwise than with reasonable dispatch is a valid provision, binding on both plaintiff and defendant, and that the court should have so advised the jury.

The plaintiff agrees with that contention, but says the court did so charge the jury in instruction No. 5. That part of instruction No. 5 referred to by the plaintiff reads as follows:

"5. It is the duty of a common carrier of live stock to handle the same expeditiously and with reasonable dispatch."

By the terms of the contract. pleaded by defendant, it was not required to transport the shipment "otherwise than with reasonable dispatch." The requested instruction correctly stated the applicable law. By the instruction given the jury were told that an additional duty was imposed by law upon the carrier, that of transporting live stock expeditiously. The words "expedite" and "expeditious", are defined by the New International Dictionary thus:

"Expedite: To make haste; to speed. Expeditious: Possessed of, or characterized by, expedition or efficiency and rapidity in action; performed with, or acting with, expedition; quick; speedy; as, an expeditious march or messenger."

Neither by law nor contract was it made the duty of the carrier to transport the shipment "expeditiously," nor otherwise than with reasonable dispatch. A similar contract was under consideration in St. Louis-San Francisco Railway Co. v. May, 110 Okla. 170, 236 Pac. 888, where it was held:

"The number of cattle constituting the particular shipment, the general movement of cattle from the territory in which the shipment originates, the general movement of cattle over the carrier's line to market, the volume of traffic moving over the line, the available equipment for the movement of the freight, and the extent of railway equipment ordinarily required to transport the general traffic, are elements which enter into the question of determining the reasonable period of time which the railway should require to move some particular shipment of cattle to market."

In so far as the element of time in transit is concerned, the carrier's liability was fixed by the contract. It was entered into with knowledge on the part of plaintiff and defendant that single car shipments of live stock move in regularly scheduled trains made up for, such purpose and not one given precedence or priority over other business of the carrier.

"In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appropriate instructions the theory of the de ense; and failure to do so, at the request of defendant, constitutes prejudicial error." Mountcastle v. Miller, 66 Okla. 40, 166 Pac. 1057; Eccleston v. Edens, 50 Okla. 237, 150 Pac. 882; Mills, Rec'r, v. Hollinshed, 82 Okla. 250, 200 Pac. 200; National Oil & Devel. Co. v. Keystone Oil Co., 91 Okla. 198, 216 Pac. 450; Jackson v. Peddycoart, 98 Okla. 198, 224 Pac. 689; Mangum Electric Company v. Border, 101 Okla. 64, 222 Pac. 1002.

We are unable to say, in the light of the evidence, that the failure of the court to submit to the jury by appropriate instructions the theory of the defense did not affect the defendant's substantial rights. The judgment is reversed, with directions to grant the defendant a new trial.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1632; 14 R. C. L. pp. 799, 800; 3 R. C. L. Supp. p. 289; 4 R. C. L. Supp. p. 920; 5 R. C. L. Supp. p. 799. (2) 10 C. J. p. 306 § 441.