Note.—See under (1) 4 C. J. p. 880, §2353; 2 R. C. L. p. 203. (2) 14a C. J. p. 662, §2657 (Anno). (3) 14a C. J. p. 373, §2232; p. 382, §2238; p. 385. §2239; p. 390, §2242; p. 662, §2657 (Anno); anno. 21 L. R. A. (N. S.) 843; 7 R. C. L. p. 579. (4) 14a C. J. p. 556, §2490; 41 C. J. p. 373, §156; 7 R. C. L. p. 578. (5) 18 C. J. pp. 180, 181, §62; 41 C. J. p. 399, §237; 19 R. C. L. p. 287. (6) 39 Cyc. pp. 1703, 1705, 1731; 19 R. C. L. p. 422. (7) 14a C. J. p. 1217, §3928. (8) 37 C. J. pp. 848, 849. §208; 17 R. C. L. pp. 728, 773. (9) 32 Cyc. p. 1077.

---

**CHICAGO, R. I. & P. RY. CO. v. BRAD-SHAW et al.**

No. 16292—Opinion Filed March 22, 1927.

(Syllabus.)

1. **Carriers—Damages to Livestock Shipment—Evidence of Unusual Delay as Proof of Negligence—Defenses and Burden of Proof.**

In an action to recover damages for injuries done to a shipment of live stock, where the evidence shows that the stock was delivered to the transportation company in good condition, and after an unusual delay the shipment reached its destination in an unusually damaged condition, a prima facie case of negligence is established, the burden then shifts to the carrier to excuse such negligence, and it becomes a question for the jury to determine from the evidence whether such negligence is excused. In such an action, the Missouri rule, "that proof of delay is not proof of negligence," is not the rule in this state; the rule in this state being:

"When evidence of unusual delay is adduced, a prima facie case of negligence is made out, and the burden then devolves on the carrier to explain the delay and to show that it arose from some cause other than the carrier's negligence, or that of his servants or agents."

2. **Same—Trial—Sufficiency of Instruction as to Carrier's Duty to Exercise Reasonable Care and Diligence Where No Request for More Specific Instructions.**

In an action for negligent injuries to a shipment of live stock, where the trial court instructs the jury that it is the duty of the carrier to exercise reasonable care and diligence in the handling and care of such live stock during transit, without specifically defining the meaning of the terms "reasonable care" and "reasonable diligence," a judgment will not be reversed for failure of the trial court to more fully define such terms, where no request is made for a fuller and more specific definition; the rule of this court being:

"If the court's charge be not sufficiently full. or sufficiently specific, it is the duty of the party who considers himself aggrieved thereby to request fuller or more specific instructions from the court, and if he fails to do so. there is no basis for an assignment of error to the giving of such instructions. The saving of exceptions thereto will not suffice, not being equivalent to a request for a fuller or more specific instruction. Such is the rule in this state."

3. **Same—Evidence—Rejection of Shipping Contract as Immaterial.**

A judgment will not be reversed for rejection of the shipping contract in evidence, where no defense under the terms of the contract is pleaded and where the contract itself has no material bearing on any issue involved in the case.

Error from District Court. Oklahoma County; Wm. H. Zwick, Judge.

Action by J. M. Bradshaw against the Chicago, Rock Island & Pacific Railway Company and the Clinton & Oklahoma Western Railroad Company, to recover damages for injuries to a shipment of livestock while

in transportation. Judgment for plaintiff, and defendant first named brings error. Affirmed.

W. R. Bleakmore, W. F. Collins, Jno. Barry, and A. T. Boys, for plaintiff in error.

Suits & Hall, for defendant in error.

HARRISON, J. This was an action to recover damages for injuries done to a shipment of cattle from Oklahoma City to Cheyenne, Okla. The shipper, defendant in error, alleged that in the afternoon of February 15, 1922, he delivered to plaintiff in error, the Chicago, Rock Island & Pacific Railway Company, 87 head of cattle, for shipment over its lines and its connecting line, the Clinton & Oklahoma Western Railroad Company, to Cheyenne, Okla. That said shipment left Oklahoma City during the evening of February 15th, and reached Cheyenne, a distance of 145 miles, in the afternoon of February 18th, having been in transit about 72 hours. That upon reaching there, four head of cattle were dead, or died soon afterwards from injuries, and all the rest more or less bruised and injured by reason of the negligent handling and negligent delay in the shipment. The shipper sued for $506.85 and recovered judgment against plaintiff in error, the Chicago, Rock Island & Pacific Railway Company, for $200, and against the connecting carrier, the Clinton & Oklahoma Western Railroad Company, for $7.40. The latter company has not appealed from the judgment against it, but plaintiff in error appeals to this court for reversal of the judgment against it.

The first proposition presented by plaintiff in error is that the verdict and judgment were not supported by the evidence, and are contrary to the law, in that the shipper pleaded specific acts of negligence and failed to show that the injuries resulted from the acts so pleaded. Plaintiff in error attempts to separate the alleged negligence in delay from the alleged negligence in the handling of the cattle, claiming that each was a specific act of negligence, and that the shipper failed to prove that the alleged injuries resulted from either one of the two specific acts of negligence alleged; citing in support of such contention, Cloyd v. Wabash Ry. Co. (Mo. App.) 240 S. W. 885, which, following the Missouri rule, held that proof of delay was not proof of negligence.

The shipper's allegations in this regard are contained in paragraph 4 of the petition and are as follows:

"Plaintiff further alleges and states that the defendants negligently and carelessly handled the train in which said shipment of cattle was being transported in a rough and unusual manner, causing said cars in which said cattle were being transported to be jerked, bumped, kicked and switched about in a rough and unusual manner, with the result that said cattle were bruised and scarred, and that two head of said cattle were dead upon arrival at destination and two died the next day; that the value of said four head of cattle was $64.10; that the damage to the balance of said shipment was $5 per head, amounting to $425.

"Plaintiff further alleges and states that the damage to said shipment of cattle was brought about by the rough and unusual manner in which said cattle were handled en route; that said shipment of cattle was unnecessarily delayed at various places along the lines and in the yards of said defendants for a period of 48 hours over and above the usual and customary time for the transportation of cattle between Oklahoma City and Cheyenne, Okla.; that as a result of said unusual delay and rough handling said cattle were thrown down in the cars, resulting in the damage hereinbefore set out."

It is observed that in the last part of paragraph 4, above quoted, the plaintiff alleged:

"That as a result of said unusual delay and rough handling said cattle were thrown down in the cars, resulting in the damage hereinbefore set out."

The evidence shows conclusively, in fact it is not disputed, that the cattle were in fairly good condition when loaded at Oklahoma City, that they were reported by the railroad witnesses to have been in good condition when they left El Reno, and in good condition when they reached Geary, with the exception that two were down, and the inspector prodded them and got them up on their feet. The record fails to show, nor is it contended, that any further inspection was made or any further attention paid to the condition of the cattle between Geary and Clinton, and it shows that they reached Clinton in the damaged condition alleged in plaintiff's petition; that they were delayed something like 48 hours beyond the usual time for shipping from Oklahoma City to Cheyenne.

There was also testimony tending to show that had the cattle been promptly delivered, even though in a damaged condition, the shipper still could have taken them and fed them and by proper care avoided some of the damage, but by reason of the negligence in both the rough handling and the delay in shipment, the damages resulted.

Hence, we see no grounds for the contention that the shipper's suit must fail because he did not prove that the damages were due wholly to delay or wholly to the

rough handling. It was the rough handling and delay in shipment which, together combined, caused the injuries, and plaintiff in error's contention cannot be sustained.

In Eastern Elevator Co. v. A., T. & S. F. Ry. Co., 93 Okla. 20, 219 Pac. 332, the action involved very much the same principles involved here; the injuries sued for were alleged to have been caused by both delay and rough handling; the same contention was made there that is made here, viz., that the shipper was required to prove that the injuries were caused either by negligent delay or negligent handling, and that the trial court in instruction No. 4½ used the following language, to wit:

"In this connection you are instructed that mere proof of delay is not proof of negligence."

This instruction was held to be prejudicial error by this court, and the judgment reversed and remanded for a new trial, and it was specifically held that the Missouri rule, viz., "that proof of delay is not proof of negligence," is not supported by the weight of authority, and quoted and followed the rule in 10 C. J. 301, section 429, to wit:

"When evidence of unusual delay is adduced, a prima facie case of negligence is made out, and the burden then devolves on the carrier to explain the delay and to show that it arose from some cause other than the carrier's negligence, or that of his servants or agents."

In W. F. & N. W. Ry. Co. v. Benton, 66 Ok'a. 114, 167 Pac. 633, this court said:

"When, therefore, plaintiff introduced evidence tending to show, as he did, shipment in good order, and proved that the cattle were injured, dead, and dying when delivered by defendant, he established a prima facie case."

And further said:

"There being, therefore, some evidence of negligence on the part of defendant, we think it was properly left to the jury to determine what, if any, damage was occasioned by the initial and terminal carriers, respectively, and to charge defendant with its proper part thereof. That the jury did this is evidenced by their verdict, which found for part only of the dead animals. That verdict, under the record, we are not at liberty to disturb."

See, also, Mann & Wheeler v. Burchard (Vt.) 94 Am. Dec. 398; C., R. I. & P. Ry. Co. v. Simmons, 100 Okla. 164, 228 Pac. 983; St. L. & S. F. Ry. Co. v. Bilby, 35 Okla. 589, 130 Pac. 1089; C., R. I. & P. Ry. Co. v. Lawton Grain Co., 94 Okla. 289, 221 Pac. 1013; St. L. & S. F. Ry. Co. v. Shepard, 40 Okla. 589, 139 Pac. 833.

The above authorities also answer the contention of plaintiff in error that the court erred in refusing to instruct the jury in favor of plaintiff in error.

The settled rule of this court is, in substance, that in an action for damages done to a shipment, where the evidence shows that the goods were delivered to the transportation company in good condition, and after an unusual delay reached their destination in an unusually damaged condition, a prima facie case of negligence is established, the burden shifts to the carrier to excuse the negligence and it becomes a question for the jury to determine from the evidence whether such negligence is excused. See authorities last above cited.

The next contention is that the trial court erred in giving instruction No. 4, the pertinent portion of which is as follows:

"You are instructed that the said defendants and each of them are under the law common carriers for hire, and you are charged that it is their duty to transport and convey over their lines of railway live stock when delivered to them for transportation, and it becomes the duty of said defendants to exercise reasonable care and diligence in the handling and care of said live stock during transit and to transport and convey the same in a reasonable and expeditious manner and without unnecessary delay in its transportation. * * *"

It is contended that this instruction is erroneous and prejudicial in that it uses the terms "reasonable care and diligence" without defining the meaning of such terms, and thereby leaving it to the jury to determine for themselves what is meant by the terms "reasonable care and reasonable diligence" in the handling and transporting of a shipment of live stock. It is contended that the court should have given the statutory definition of the terms and that section 3531, C. S. 1921, defines their meaning. Said section reads as follows:

"Slight care or diligence is such as persons of ordinary prudence usually exercise about their own affairs of slight importance; ordinary care or diligence is such as they usually exercise about their own affairs of ordinary importance; and great care or diligence is such as they usually exercise about their own affairs of great importance."

It appears to us that the language in the instruction is about as clear as the definition given by the statute, and that if a juror could not understand what was meant by the words "reasonable care" and "reasonable diligence" in the handling and transporting of a shipment of live stock, he could not be made to understand their meaning by adding the statutory definition. The one

is about as clear as the other, and under either the instruction given by the court, or under the statutory definition of the degree of care, it is, after all, left to the individual judgment of the jury to determine the fact of diligence or negligence.

Plaintiff in error cites Denver & R. G. Co. v. Norgate, 141 Fed. 247, 6 L. R. A. (N. S.) 981, wherein the United States Circuit Court of Appeals for the 8th Circuit reversed a judgment of the district court for refusing to define the terms "ordinary care" and "reasonable care" after having been requested to do so, but it appears that in said case the trial court was requested to give the following instruction:

"You are further instructed that ordinary or reasonable care as used throughout these instructions is such care as a reasonably prudent man would exercise under like circumstances and conditions to those shown in evidence"

—which instruction was refused.

The Circuit Court of Appeals said:

"We think that when a court is requested in proper language to define 'ordinary care' or 'reasonable care,' it is its duty to do so, because the finding of the jury upon this question in this class of cases determines whether either party has been guilty of negligence or not."

The error of the district court in said case was not held to consist so much in its failure to more fully define the meaning of the terms "ordinary care" or "reasonable care" as in its refusal to give requested instruction which did more fully and specifically define such terms.

In the case at bar no such request was made, the only instruction offered or requested to be given by plaintiff in error was the request to instruct the jury to return a verdict in favor of plaintiff in error.

In M., O. & G. Ry. Co. v. Collins, 47 Okla. 761, 150 Pac. 142, this court said:

"If the court's charge be not sufficiently full, or sufficiently specific, it is the duty of the party who considers himself aggrieved thereby to request fuller or more specific instructions from the court, and if he fails to do so, there is no basis for an assignment of error to the giving of such instructions. The saving of exceptions thereto will not suffice, not being equivalent to a request for a fuller or more specific instruction. Such is the rule in this state." Citing 38 Cyc. 1693, and a number of decisions from this court.

In Gourley v. Oklahoma City, 104 Okla. 210, 230 Pac. 923, this court said:

"There is a further reason why the objection of attorneys for plaintiff to the instructions given cannot be allowed and that is that they did not make any request of the trial court for additional instructions nor call the court's attention to any omission, and the plaintiff is thereby precluded from making such failure to give fuller instructions available as reversible error. This is the rule adopted by this court in the case of Rose v. Cochran, 84 Okla. 148, 202 Pac. 1003, and the more recent case of Central Petroleum Co. v. Lewis, 98 Okla. 26, 224 Pac. 186."

Furthermore the instruction complained of seems equally as fair to the carrier as to the shipper, and we are unable to see wherein the substantial rights of the carrier could have been materially prejudiced by the giving of such instruction.

We find no prejudicial error in the admission of testimony nor in the rejection of the shipping contract. The plaintiff in error set up no defense under the shipping contract, nor contended that the contract had been in any way violated by the shipper; on the contrary, the evidence shows conclusively that the train moved out of El Reno, with said cattle, an hour earlier than the crew had informed the shipper that they would be moved out. The contract had no material bearing on any of the issues presented, and we see no error in its rejection as evidence.

The judgment is affirmed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, RILEY and HEFNER, JJ., concur. MASON, J., not participating.

Note.—See under (1) 10 C. J. p. 301, §429; p. 305, §440; anno. L. R. A. 1915D, 649; 4 R. C. L. pp. 993, 994; 1 R. C. L. Supp. p. 1253; 4 R. C. L. Supp. p. 303; 6 R. C. L. Supp. p. 282.   (2) 3 C. J. pp. 852, 853, 854, §756; p. 855, §757; 38 Cyc. pp. 1688, 1689, 1694, 1695.   (3) 4 C. J. p. 1005, §2987.