CHICAGO, R. I. & P. RY. CO. v. WHITE.

No. 24439.   March 5, 1935.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for plaintiff in error.

P. D. Sullivan and Sandlin & Winans, for defendant in error.

PER CURIAM. This action was brought by the defendant in error, as plaintiff, against the railway company as a common carrier, as defendant, to recover damages for negligent delay in the transportation of a shipment of two carloads of cattle from Comanche, Okla., to Wichita, Kan. The plaintiff claimed unreasonable delay on the part of the railway company in the transportation of the shipment, whereby he failed to reach the market within a day of the shipment, and sustained loss due both to shrinkage in weight and decline in marketing price. Trial was had before a jury. The railway company interposed a demurrer at the conclusion of the plaintiff's evidence, which was overruled, exceptions were saved, and it thereupon presented its evidence. At the conclusion of all the evidence the railway company moved for a directed verdict in its favor, which was denied. There was a verdict for the plaintiff, and judgment was entered thereon. Defendant's motion for a new trial, timely filed, was denied. The one ground urged for reversal is that the plaintiff failed to offer any proof, and there was no proof otherwise, that the railway company failed in its duty to transport the shipment with reasonable dispatch, and the court should have sustained the demurrer to the evidence, or, failing in that, should have instructed the jury to return a verdict in favor of the railway company.

The only testimony offered by the plaintiff concerning the time taken for the shipment was given by himself. The cattle were delivered by plaintiff to the carrier at Comanche about 5 o'clock p. m., on July 27, 1930. Immediately the parties entered into the usual form of uniform bill of lading covering the transportation of the cattle to Wichita, Kan. Both parties plead and rely upon this contract. The shipment moved promptly from Comanche, and arrived in El Reno at 12:30 a. m., on July 27th, and remained there until 8:55 o'clock in the morning of the 28th, when it was moved on the first regular freight train, and arrived at Wichita about 4:20 o'clock, and was delivered at the stockyards for unloading at 5:40 p. m., on July 28th. The plaintiff related the movement of the shipment, but made no proof nor claimed to know how long it should reasonably take to transport two cars of cattle from Comanche to Wichita. He complained, in his direct examination, that the shipment remained too long in El Reno, but offered no proof that the stop there was unreasonable; and on cross-examination he stated that he did not know what would be a reasonable period of time in which to move the shipment from the point of origin to destination, that he had never shipped cattle to Wichita before, and did not know of any other person who had made such a shipment; that he did not know of any cattle having been shipped from Comanche around five or six o'clock in the evening which had reached Wichita in time for the market the next morning.

The evidence of the railway company showed, by its published schedule, that the train on which the cattle were shipped from Comanche was due to depart about 4:40 p. m., to arrive at El Reno at 11:15 p. m.. and there the cattle were to be unloaded for feed and rest, and picked up at 7:15 a. m., and thence transported to Wichita, where they were scheduled to arrive at 3:42 p. m.

The testimony of the plaintiff was that the train moving the shipment left Comanche about 5 o'clock and arrived at El Reno around 12 o'clock, at which point it remained until about 10 o'clock the following morning, and arrived at Wichita around 5 to 6 o'clock in the evening.

The proof of the railway company showed that the train arrived at El Reno at 12:30 a. m., or one hour and fifteen minutes after its scheduled time of arrival, and there the shipment was kept until 8:55 a. m., or one hour and forty minutes after the scheduled

time of leaving, and that the train arrived at 4:20 p. m., and was spotted for unloading at 5:40 p. m. on the same day. It was also undisputed that the customary time necessary in preparing shipments of cattle for market in Wichita after their arrival by railroad was from 12 to 18 hours, and that it was customary to place cattle arriving at 11 a. m., or thereafter upon the market the following morning. The plaintiff testified that he had never before shipped cattle to the Wichita market.

The foregoing are the salient facts appearing in the proof. The bill of lading, which was the contract of carriage between the parties, provided, among other things, "No carrier is bound to transport said live stock by any particular train or vessel or for any particular market * * * or otherwise, and with reasonable dispatch." This court, in the case of St. Louis & San Francisco Railway Co. v. May, 110 Okla. 170, 236 P. 888, defined the duty imposed upon a railway company by a shipper's contract similar to that executed by the parties in this case, as follows:

"A shipper's contract for the carriage of cattle to market imposes the duty upon the railway to transport the cattle to their destination in a safe condition, within a reasonable period of time."

The provision of the contract quoted, supra, neither adds to nor takes away anything from this rule. Both parties were bound by the contract; it was entered into with knowledge on their part that single car shipments of live stock move in regularly scheduled trains made up for such purpose, and not one given precedence or priority over other business of the carrier. Atchison, Topeka & Santa Fe Ry. Co. v. Ridley, 119 Okla. 138, 249 P. 289. The burden of proof is on the shipper to make out a prima facie case of negligence. This burden he meets when he makes a showing that the cattle did not reach the market within that period of time "ordinarily required by the carrier to transport such a shipment to its destination." St. Louis & San Francisco Ry. Co. v. May, supra. The manner of proving whether or not the shipment moved within the time ordinarily required was laid down by this court in the case of Chicago, Rock Island & Pacific Ry. Co. v. Haskell, 117 Okla. 185, 245 P. 858, as follows:

"In an action against a common carrier to recover damages for the negligent delay in the transportation of cattle from a point in this state to their destination in another state, witnesses who, from past experience,

are familiar with such transportation may properly testify as to the usual and customary time required to make such shipments, and from this testimony and other competent testimony in the case it is the province of the jury to determine whether or not the time actually taken by the carrier for the transportation of the cattle alleged to have been negligently delayed was reasonable or unreasonable."

In determining the factors to be considered as to whether or not a movement of cattle between two points is reasonable, in the case of St. Louis & San Francisco Ry. Co. v. May, supra, this court also said:

"The number of cattle constituting the particular shipment, the general movement of cattle from the territory in which the shipment originates, the general movement of cattle over the carrier's line to market, the volume of traffic moving over the line, the available equipment for the movement of the freight, and the extent of railway equipment ordinarily required to transport the general traffic, are elements which enter into the question of determining the reasonable period of time which the railway should require to move some particular shipment of cattle to market."

Under the proof, did the plaintiff make a prima facie case? All the evidence shows that the cattle moved and were delivered at their destination within about an hour of the time prescribed by the schedule of the railway company. He failed to show that any other shipment had been moved over this distance in a shorter period of time than was used in this instance; he failed to show what was the usual and customary time required to make such shipments; he failed to show the general movement of cattle from Comanche, the general movement of cattle over the carrier's line to market, the volume of traffic moving over the line, and the available equipment for the movement of freight. The effect of his evidence is that he submitted the railway company schedule to the jury and asked for a judgment for damages because the schedule was too slow. Juries are not permitted to fix schedules for railroads or any other carriers. We do not say that in some instances a delay of the time proved might not be actionable. However, the plaintiff's proof wholly failed to show that this was such an instance, and the motion for an instructed verdict should have been sustained. The judgment is therefore reversed.

The Supreme Court acknowledges the aid of Attorneys Chas. A. Holden, Villard Martin, and Sam A. Neely in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Chas. A. Holden and approved by Mr. Martin and Mr. Neely, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.