211 So.2d 25 (1968)
SEABOARD AIR LINE RAILROAD COMPANY, Appellant,
v.
LAKE REGION PACKING ASSOCIATION, Appellee.
No. 1338.
District Court of Appeal of Florida. Fourth District.
May 29, 1968.
Rehearing Denied June 28, 1968.
*26 George T. Eidson, Jr., and J. Thomas Cardwell of Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, for appellant.
Charles T. Wells and M.W. Wells of Maguire, Voorhis & Wells, Orlando, for appellee.
REED, Judge.
Lake Region Packing Association, the plaintiff, filed a complaint against the defendant, Seaboard Air Line Railroad Company (now known as Seaboard Coast Line Railroad Company), in the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida. In its complaint, the plaintiff alleged that on November 22, 1963, it delivered to the defendant at Tavares, Florida, in good condition, a trailer load of fresh tangerines for transportation by the defendant and its connecting carriers to Philadelphia, Pennsylvania, and delivery to A. Cancelmo Company as consignee; that the goods were negligently transported by the defendant, a common carrier, and as a consequence delays occurred preventing the delivery of the tangerines in time for sale at an auction in Philadelphia on November 25, 1963. As a proximate result of the delay, according to the complaint, the tangerines were not sold until the following morning at a lesser price than could have been obtained had they been sold at the auction on November 25th as was intended by the plaintiff.
The defendant's answer admitted that it was a common carrier but substantially denied the other allegations in the complaint.
*27 The cause was tried before a jury which rendered a verdict for the plaintiff and the defendant brings this appeal from the final judgment and the denial of its motion for a new trial. The points argued by the defendant on appeal relate to the admissions of certain testimony adduced by the plaintiff and to the jury instructions.
The bill of lading under which the tangerines were shipped provided that the carrier shall be liable as at common law for any loss or damage. It also provided that, "No carrier is bound to transport said property by any particular train * * * or in time for any particular market or otherwise than with reasonable dispatch. * * *" Thus it is clear that this case does not involve a special contract calling for delivery at a particular time. The liability of the defendant with respect to the time for the transportation must be measured by the duty imposed on it by common law as modified by the Carmack Amendment to the Interstate Commerce Act, U.S.Code Sec. 20(11), which imposes liability on the initial carrier for loss or damage occasioned by a connecting carrier.[1]
With regard to the liability of the common carrier for the transportation of goods entrusted to it, the ably prepared briefs of both parties have provided the court with numerous citations. After a review of these citations as well as others, it is amply apparent that a multitude of formulas have been employed by the courts for the purpose of verbalizing this duty. For example, it has been held that a carrier is obligated to transport goods within a reasonable time.[1A] It has also been held that although a common carrier is not an insurer of delivery in time for any particular market,[2] it must complete the shipment without unnecessary delay.[3] Other cases have said that it is the duty of the carrier to avoid unreasonable delay;[4] to ship the goods with all convenient dispatch;[5] or to exercise reasonable diligence, care, and dispatch in performing the transportation.[6]
Despite the divergent language in the various cases, it is clear that the duty therein sought to be imposed on the common carrier with respect to the transportation and delivery of goods is based on the law of negligence. The common carrier, therefore, is obligated, in the absence of a special contract or statute, to use reasonable care to transport the goods entrusted *28 to it by a shipper.[7] If the carrier exercises reasonable care under the circumstances and the shipment is delayed, no liability attaches.[8] On the other hand, if the carrier fails to exercise reasonable care under the circumstances and as a proximate result consumes more time in the transportation than would have been required had reasonable care been exercised, such excess time is a delay which when proximately causing damage gives rise to a cause of action.
Because any delay which may occur in the course of transportation after the goods have been delivered to the common carrier is far more apt to be known to and understood by the carrier than the shipper, the courts have constructed a presumption as a procedural device to aid the shipper in the presentation of his case.[9] Here, as elsewhere, there are various statements as to what must be proved by the shipper to give rise to the presumption; however, we think that a fair review of the authorities indicates that where a shipper presents competent evidence which fairly and reasonably tends to show that his goods were not transported in the time ordinarily and customarily required by the defendant for the transportation of similar goods between the points involved and damage proximately resulting from such delay, the shipper makes out a prima facie case and is entitled to the benefit of a presumption of negligence in his favor.[10] Of course the effect of this presumption is not to shift the burden of proof but  as with other presumptions of this nature  places the burden of going forward with the evidence on the defendant to show that the delay was not attributable to its negligence. The presumption vanishes when any material evidence is produced by the defendant fairly and reasonably tending to rebut the presumed fact. When the defendant comes forward with such evidence, the entire matter should be deposited with the trier of facts for its determination, unless the defendant makes his lack of negligence so clearly appear that the issue becomes one of law for decision by the court.[11]
We are aware that there is a minority view apparently adopted in only one jurisdiction which denies the benefit of this presumption to the shipper and requires that he make an actual showing of negligence in order to be entitled to get to the jury.[12] We do not believe that the minority view is consistent with the trend of the law in Florida[13] and, therefore, do not choose to apply it here.
Turning now to the contentions of the defendant, it submitted a requested jury instruction at the time of trial which stated:
"What is a reasonable time is not susceptible of being defined with precision, but the circumstances of each *29 particular case must be considered in order to determine what is the reasonable time in that case. The mode of conveyance, the distance involved, seasons of the year, the character of the weather, the ordinary facilities for transportation, and the volume of traffic are examples of factors to be considered in determining whether, in this particular case, there was an unreasonable delay."
The defendant argues on appeal that the trial court erred in not giving this instruction. It is our view that the requested instruction was properly refused because it sought to express the duty of the carrier in terms of "a reasonable time" and this concept, insofar as a jury instruction is concerned, is meaningless when separated from the duty of reasonable care. The term "reasonable time" as used in the various cases dealing with a common carrier's duty to transport, actually refers to the end result of the exercise of reasonable care by the carrier in transporting goods. Furthermore, the factors mentioned in the instruction such as weather, distance, etc., could have been considered by the jury under the court's general instruction defining negligence and its more specific instructions relating the defendant's liability to negligence.
Next, the defendant complains that instead of instructing the jury as defendant requested:
"* * * The burden is upon (plaintiff) to prove by a fair preponderance of the evidence, first that the defendant-railroad negligently failed to transport the trailer of tangerines to Philadelphia, Pennsylvania, with reasonable dispatch under the circumstances. * * *"
the court erroneously altered the requested instruction by deleting the phrase "under the circumstances". The defendant argues that this charge, when given as altered, prevented the jury from considering the circumstances of the shipment. It is our view that the term "negligently" as used in the charge is sufficiently defined in other instructions to relate the particular instruction to the circumstances surrounding the transportation in question.
Next, the defendant charges that the trial court erred in giving the following instruction:
"Under the law in an action to recover from a carrier for market decline due to failure to transport and deliver within the usual time, the shipper establishes his prima facie case when he shows delivery to the carrier at origin, failure to deliver in the usual and customary time, and the amount of damages, * * * Thereupon, the carrier may show that it was free from negligence and that the damage was not due to unreasonable delay."
According to the defendant, the instruction was erroneous in that: (1) it directed the jury not to consider the circumstances of the particular transportation; (2) it equated usual and customary time to reasonable time; and (3) it placed the burden of proof on the defendant. While we cannot approve the form of this charge because it comes dangerously close to instructing the jury on a presumption, we also cannot agree with the defendant's contentions. The last sentence in the instruction clearly informs the jury that the carrier may excuse itself by showing a freedom from negligence. The instruction, therefore, does not impose absolute liability on the carrier for failure to deliver within the usual time. Other instructions given by the court amplify on the principle that a carrier is not an insurer against delay and that its liability is dependent on a delay caused by negligence which is properly defined in the instructions. The instruction must be taken in conjunction with all of the other instructions including the following which seems to us to fairly place the burden of proof on the plaintiff:
"Negligence, as alleged in this case, is not presumed from the mere happening *30 of a loss to the plaintiff. Negligence is a fact which must be proved by the evidence and the burden rests upon him who charges negligence to prove it by fair preponderance of the evidence.
"You are instructed that in order to entitle a party to recover in an action at law against a denial by the defendant, the burden is upon him to prove every essential element of his cause of action by fair preponderance of the evidence."
When so considered, we do not believe that the giving of the instruction constitutes reversible error.[14]
For the foregoing reasons, we find no harmful error in the instructions.
In order to prove the usual time for transporting fruit from Florida to Philadelphia and thereby raise the presumption discussed above, the plaintiff called five witnesses each of whom had been directly concerned for a substantial period of years with various aspects of the transportation by rail of fruit from Florida for sale in the eastern United States. For example, one witness had been engaged for twenty years in the business of receiving Florida fruit in Philadelphia and there selling it. Another had been shipping Florida fruit for sale in the east continuously since 1935. Each witness stated that he was familiar with the usual and customary time for transporting fruit from Florida to Philadelphia and each expressed an opinion as to the usual and customary time required for such transportation. The opinion of each witness was based at least in substantial part on one or more of the following sources of information: (a) reports to the witness from agents or representatives in Philadelphia; (b) published market reports of auction sales at Philadelphia; and (c) business records not introduced in evidence, but generated by the witness' business. None of the witnesses had such actual knowledge of the usual and customary time for the transportation of fruit from Florida to Philadelphia as would have been acquired by personally and repeatedly riding on a railroad car carrying fruit. Each of the witnesses, however, occupied positions directly concerned with the practical commercial consequences of transportation times and each appeared to have ample ability to acquire accurate conceptions of the usual time required for such transportation.
The defendant made timely objection to the opinions on the ground that they were based either on hearsay evidence or business records not before the court and has raised as a point on appeal the propriety of the admission of the opinions in evidence.
At the outset, we might state that no contention is made by the defendant that the subject matter of the opinions, that is, the usual time for the transportation of fruit by rail from Florida to Philadelphia, is inappropriate for opinion testimony. The basic legal problem presented by the defendant relates to the qualification of the witnesses to express the pertinent opinions, not to the competency of the testimony. For this reason, cases involving medical testimony by acknowledged experts and concerned primarily with the admissibility of such testimony, as distinguished from the competency or qualification of the witnesses, provide little if any assistance with respect to the immediate problem.
To qualify as a skilled witness, one must have such skill, knowledge or experience with respect to the subject matter about which he is called to testify that it appears to the trial court that his opinion will probably aid the jury in the resolution of an ultimate issue of fact.[15] Within the confines of the broad rule *31 just stated, it is generally recognized that one may qualify to express an opinion as a skilled or expert witness by virtue of study of authoritative sources even without practical experience.[16] What is or is not a sufficient study to qualify one as an expert is relative to the subject matter about which the witness is called to testify.[17] The determination of a witness' qualification to express an opinion  which would include an inquiry into and an evaluation of the basis of the witness' knowledge  is peculiarly a matter within the realm of the trial judge who should not be reversed in the absence of a clear showing of error.[18]
Applying these principles to the case at hand, we are of the opinion that there was no clear abuse of discretion by the trial court in permitting the witnesses to testify with respect to the usual time required to transport a shipment of fruit by rail from Florida to Philadelphia. Each of the witnesses was shown to have studied this subject over a period of years from sources which, although secondary in nature, reasonably could have been considered by the trial judge as trustworthy and adequate in view of the nature of the subject,[19] and the admission of the opinions finds some support in decisions from other jurisdictions.[20]
For the foregoing reasons the judgment of the trial court is affirmed.
CROSS and McCAIN, JJ., concur.
NOTES
[1] The pertinent provisions of this act read as follows: 49 U.S.Code, Sec. 20(11):

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company fom the liability imposed * * *."
[1A] Florida East Coast Ry. Co. v. Peters 1916, 72 Fla. 311, 73 So. 151, 161.
[2] Janesville Live Stock & Shipping Co. v. Hines, 1920, 146 Minn. 260, 178 N.W. 739, 740; Burtis v. Chicago, B & Q R. Co., 1933, 124 Neb. 534, 247 N.W. 42.
[3] Payne v. Mallory, 1921, 148 Ark. 431, 230 S.W. 270, 272.
[4] Wallace-Farmer v. Davis, Iowa 1924, 199 N.W. 307, 309.
[5] Southeastern Express Co. v. Bowers, Inc., 1936, 21 Tenn. App. 295, 109 S.W.2d 851, 853.
[6] Southern Pacific Company v. H. Rothstein & Sons, Tex.Civ.App. 1957, 304 S.W.2d 383, 385; Warren v. Portland Terminal Co., 1922, 121 Me. 157, 116 A. 411, 412, 26 A.L.R. 304.
[7] Stephens v. Chicago & N.W.R. Co., 1929, 200 Wis. 181, 227 N.W. 875; Wallace-Farmer v. Davis, Iowa 1924, 199 N.W. 307, 309; Chicago, R.I. & P.R. Co. v. White, 1935, 170 Okla. 646, 41 P.2d 847, 848; Saliba v. New York Central R. Co., 1929, 101 Vt. 427, 144 A. 194; Leo Lococo's Sons v. Louisville & N.R. Co., 1935, 259 Ky. 299, 82 S.W.2d 332; Fla. East Coast Ry. v. Peters, 1916, 72 Fla. 311, 73 So. 151, 161. For additional authority see 13 C.J.S. Carriers § 191.
[8] In Wallace-Farmer v. Davis, Iowa, 1924, 199 N.W. 307, 309, the court stated:

"* * * Whatever delays are shown in this record were without fault on the part of the carrier. * * * The carrier under such circumstances is a mere bailee for hire, and a shipper may recover only upon proof of negligence."
[9] National Elevator Co. v. Great Northern R. Co., 1919, 141 Minn. 407, 170 N.W. 515.
[10] Leo Lococo's Sons v. Louisville & N.R. Co., 1935, 259 Ky. 299, 82 S.W.2d 332.
[11] Leonetti v. Boone, Fla. 1954, 74 So.2d 551, 552; Gulle v. Boggs, Fla. 1965, 174 So.2d 26, 29.
[12] 13 C.J.S. Carriers § 216, page 423.
[13] Compare Adelman v. M & S Welding Shop, Fla.App. 1958, 105 So.2d 802.
[14] Compare Shaw v. York, Fla.App. 1966, 187 So.2d 397.
[15] Mills v. Redwing Carrier, Inc., Fla.App. 1961, 127 So.2d 453, 456.
[16] Miller v. Travelers Insurance Company, 1965, 111 Ga. App. 245, 141 S.E.2d 223, 225; Delaney v. Morris, 1944, 193 Okla. 589, 145 P.2d 936; Lone Star Gas Company v. Thomas, Tex.Civ.App. 1961, 345 S.W.2d 844, 846.
[17] Modern Trial Evidence, Conrad, 1956, § 664.
[18] Davis v. State, 1902, 44 Fla. 32, 32 So. 822; Atlantic Coast Line R. Co. v. Crosby, 1907, 53 Fla. 400, 43 So. 318; Central Hardware Co. v. Stampler, Fla.App. 1965, 180 So.2d 205; Upchurch v. Barnes, Fla. App. 1967, 197 So.2d 26, 29.
[19] It appears from the defendant's opening argument that the complexities of moving a railroad freight car from Florida to Philadelphia are such that it is reasonably unlikely that actual first hand information would be available as to the usual time for such transportation. Record, page 156.
[20] Chicago, R.I. & P.R. Co. v. Lawton Grain Co., 1923, 94 Okla. 289, 221 P. 1013, 1015; Dickinson v. Seay, 1918, 71 Okla. 66, 175 P. 216, 218; Baker v. Nance Bros., Tex.Civ.App. 1927, 294 S.W. 290, 292.